IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Paul Smith,** | : | |
| Plaintiff, | : | |
| | | Case No. 3:19-cv-00332-TPK |
| vs. | : | |
| **Andrew Saul,** | : | Magistrate Judge Kemp |
| **Commissioner of** | | |
| **Social Security,** | : | |
| Defendant. | : | |

**OPINION AND ORDER**

    Plaintiff Paul Smith filed this action seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on August 23, 2019, denied his application for social security disability benefits.  Plaintiff filed a statement of errors on February 27, 2020 (Doc. 9) to which the Commissioner responded on May 11, 2020 (Doc. 13).  The parties have consented to final disposition of this case by a United States Magistrate Judge.  For the following reasons, the Court will sustain the statement of errors and remand this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

**I. INTRODUCTION**

    Plaintiff protectively filed an application for social security disability benefits on February 19, 2016, alleging that he became disabled on October 3, 2015.  After initial administrative denials of his claim, Plaintiff appeared at a hearing held before an Administrative Law Judge on April 20, 2018.  A vocational expert, Mark A. Pinti, also testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on September 6, 2018.  In that decision, she first found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2021 and that he had not worked since his alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including lumbar spondylosis with stenosis, degenerative joint disease, and chronic pain syndrome.  However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform a reduced range of sedentary work.  She concluded that Plaintiff was capable of the exertional demands of sedentary work but needed to alternate between sitting and standing or

walking every 40 minutes; could climb ramps and stairs and stoop, kneel, and crouch only occasionally; could never climb ladders, ropes, or scaffolds; could frequently reach, but only occasionally reach overhead, with the right upper extremity; could never work around unprotected heights or dangerous machinery; and could not do commercial driving.

Plaintiff's past work included the sedentary skilled jobs of district manager and merchandise manager. The ALJ found that someone with Plaintiff's residual functional capacity could perform these two jobs. As a result, she concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In his statement of errors, Plaintiff raises a single issue. He argues that the ALJ's analysis of his pain-related limitations contradicted both Agency policy and case law from the Court of Appeals.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020),

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.
>
> The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'

" *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

The Court will begin its review of the factual background of this case by summarizing the testimony given at the administrative hearing. It will then recite the pertinent information found in the medical records.

Plaintiff first testified that he lived in a two-story home and that he climbed the stairs slowly and infrequently. He resided with his wife and a two-year-old daughter whom he cared for while his wife was at work. There were also two dogs in the household.

Plaintiff had received a two-year technical degree in electrical technology. He had worked as a store manager for Advance Auto Parts and at some point was promoted to district manager with responsibility for 16 stores. After that, he worked as an operations manager for a trucking firm. When that firm went out of business, he became a store manager for Midas Muffler and then a store manager for Burlington Coat Factory. He took medical leave from that last job due to pain in his right leg. Subsequently, he underwent right hip replacement, and at the time of the hearing he was having problems with his left hip. He also had sharp pains in his back if he turned the wrong way.

Concerning household chores, Plaintiff said he could use a self-propelled vacuum cleaner, do dishes, and do laundry. He had no problems cooking except when he had to reach overhead. He used a cane when walking and also leaned on a grocery cart while shopping, and he said that there were times he needed help in the grocery store getting certain items. He did not like to take any medication for pain because of the way it made him feel.

The vocational expert, Mr. Pinti, classified Plaintiff's past work as ranging from heavy to sedentary in exertional level, with the jobs of district manager and merchandise manager being sedentary and skilled. He was then asked questions about a hypothetical person who could do light work but with most of the limitations described above. In response, Mr. Pinti said that such a person could do the jobs of merchandise manager, operations manager, district manager, and retail manager as those jobs are usually performed. However, if the person needed to lie down on an as-needed basis or could not sit and stand for a total of eight hours in a workday, those jobs would not be available. The same would be true if the person needed two additional 15-minute work breaks or was limited to simple routine tasks, if he had to use a cane, or if he missed two days of work per month. Finally, when asked if someone limited to sedentary work could do any of those jobs, Mr. Pinti testified that both the merchandise manager and district manager jobs could be performed by someone who was limited in that manner.

The relevant medical records show, first, that Plaintiff was seen in the emergency department on October 3, 2015 reporting right hip pain and bilateral leg pain. He also had a

history of chronic back pain. Examination showed moderate tenderness with external rotation of the hip and an x-ray revealed mild arthritic changes in the lower lumbar spine and affecting both hip joints. His pain was alleviated with morphine and he was discharged on medications. On October 14, 2015 he was diagnosed with multilevel degenerative disease and facet osteoarthrosis with stenosis based on an MRI. Less than two months later, he underwent a minimally invasive hemilaminectomy and foraminotomy and was discharged in stable condition. Almost immediately thereafter, he injured his right shoulder, which injury was subsequently diagnosed as a non-displaced fracture of the humeral head and a retracted tear of the supraspinatus tendon. That condition was addressed through surgery and the surgery reportedly improved his pain. Plaintiff then developed epicondylitis in his left elbow and pain in his right knee, the latter of which caused him to walk with a limp. An MRI showed tears in the meniscus. Also in 2016, at a follow-up visit with his neurosurgeon, Plaintiff said that the surgery had almost completely eliminated his radicular leg pain

       The following year, Plaintiff had his right hip replaced and had arthroscopic surgery on his right knee. By that time, he had also developed pain in his left hip which, according to a treatment note from 2018, caused "popping and cracking while walking the dog or pushing a cart or lawnmower." (Tr. 631). At that time, he was walking with a cane. Late in 2017, Plaintiff reported pain in many joints including his back and said he was having difficulty returning to normal activity. He had reinjured his right knee in a fall and for a time was using a wheeled walker. In early 2018, a note from Plaintiff's neurosurgeon, Dr. Hiremath, indicated that Plaintiff had been suffering from "horrible low back pain" for a number of months which was aggravated by walking, sitting, standing, bending, and lifting. An examination revealed tenderness along the right paraspinal lower lumbar region, but his gait was intact and strength was normal. The symptoms demonstrated an exacerbation of low back pain.

       Also in 2018, Plaintiff received treatment from the Ohio Pain Clinic. Those notes show that he reported the pain as sharp and shooting and said that it interfered with his sleep and affected his ability to work. It was alleviated by lying down and aggravated by bending. Straight leg raising was positive and radiculopathy was present. In February, the notes say that he had failed to respond to conservative treatment and in April he was seen as a good candidate for a spinal nerve stimulator because he had "failed pretty much every modality" for addressing his pain.

       Plaintiff was also seen in the Dayton Arthritis and Allergy Center in April, 2018 based on a referral from his primary care physician. He reported experiencing chronic low back pain since 2010 and said that it was temporarily relieved by the 2014 surgery but the pain returned a year later and did not respond favorably to steroid injections. He described it as "significant discomfort and severe pain." (Tr. 663). However, he was not taking any medications. His posture showed a lean toward the left and significant discomfort with range of motion of the lumbar spine and mild discomfort with range of motion of the knees. He was prescribed Cymbalta for his pain.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in the way she analyzed his contention that his pain was so severe that it prevented him from performing even sedentary work.  He notes that Social Security Regulations, particularly SSR 16-3p, require an ALJ to consider specific factors in deciding whether subjective complaints of pain are consistent with the objective evidence of medical impairments.  That regulation provides that in cases where the objective medical evidence does not fully support a claimant's statements about the "intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must consider the entire record, including statements from the claimant, medical sources, and non-medical sources.  In so doing, an ALJ is instructed to use the seven factors enumerated in 20 C.F.R. §§404.1529(c)(3) and 416.929(c)(3), which are the following:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has sued to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Plaintiff acknowledges both that a reviewing Court is required to give deference to an ALJ's applications of these factors and that an ALJ need not provide a written analysis of each factor separately and explicitly.  However, he contends that the ALJ both inadequately and inaccurately considered these factors, thus requiring the Court to remand the case for further proceedings.  Because Plaintiff's argument focuses on the accuracy and completeness of the ALJ's written discussion of Plaintiff's pain and symptoms, the Court will recite that discussion in some detail.

The ALJ found that Plaintiff suffered from medical impairments that could reasonably be expected to cause the type of symptoms he alleged, which is the first (and proper) step in the analysis of subjective complaints of pain.  After doing so, the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 20).  She provided these reasons in support of her conclusion.

First, his statements were "inconsistent with the overall objective evidence of record," which she then summarized and which included a note indicating marked improvement in his right shoulder condition following surgery in 2016; an MRI showing only slight effusion in the shoulder joint and normal biceps and triceps tendons; lack of treatment for tennis elbow in his left arm; the ability to push a lawn mower and grocery cart in 2018; and notes showing normal motor strength in all extremities and intact sensation. *Id*. The evidence also demonstrated that Plaintiff obtained significant relief from his back pain following surgery in 2015; that he had a normal gait and full strength in his back; that his hip pain responded well to medication in 2017; that despite his claims of radiculopathy, his treating neurosurgeon did not find evidence of that condition; and that he was treated conservatively for back or leg pain. (Tr. 20-21). Finally, the ALJ pointed out that the state agency physicians, Dr. Hughes and Dr. Delphia, had concluded that Plaintiff could do light work, a conclusion the ALJ described as "somewhat consistent with the overall objective evidence," including Dr. Hiremath's findings that Plaintiff's gait, station, and strength were normal and that he would have difficulty only with strenuous activity. Consequently, to the extent that Plaintiff alleged additional limitations, those allegations were not accepted. *Id*.

The Court is guided in its determination of Plaintiff's claim of error by this statement from *Gursky v. Colvin*, 2017 WL 6493149, at *8 (W.D. Tenn. Dec. 19, 2017):

> The Sixth Circuit has "held that an administrative law judge's credibility findings are virtually unchallengeable" absent compelling reasons. *Shepard v. Comm'r of Soc. Sec.*, No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) *(quoting Ritchie v. Comm'r of Soc. Sec.,* 540 Fed.Appx. 508, 511 (6th Cir. 2013))*. Those compelling reasons appear when ALJs' credibility determinations are not "supported by substantial evidence."

It is certainly true that "[a]n ALJ is not required to accept a claimant's subjective symptom complaints ... and may properly discount the claimant's testimony about her symptoms when it is inconsistent with objective medical and other evidence." *Avery v. Comm'r of Soc. Sec.*, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). However, as stated in *Davis v. Comm'r of Soc. Sec.*, 2017 WL 1044773, at *8 (S.D. Ohio Mar. 20, 2017), *report and recommendation adopted,* 2017 WL 4221459 (S.D. Ohio Sept. 21, 2017),

> [a]lthough the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. *See, e.g. Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

Finally, SSR 16-3p provides that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess

how the adjudicator evaluated the individual's symptoms."

Here, the Court concludes that the ALJ's decision is not supported by substantial evidence in the record and relies upon a selective and, at times, inaccurate reading of that record. The statements concerning improvement in Plaintiff's back pain after his surgery fail to reflect the fact that the improvement lasted only temporarily and that Plaintiff reported, and was treated for, significant back pain for several years after the relief he had obtained from his surgery wore off. Also, as Plaintiff's memorandum points out, it is simply not possible to read this record as demonstrating that Plaintiff received only conservative treatment. Plaintiff had surgery; he had injections; he was prescribed medications; he was recommended for a spinal cord stimulator; and the treatment notes indicate that he had failed all conservative treatment methods. Using the failure of conservative treatment as a reason to discount a claimant's statements about pain fails the basic test of rationality. The record also contains evidence about radiculopathy which contradicts the statements made in the ALJ's rationale. The fact that Plaintiff showed normal muscle strength and gait is not, by itself, enough to justify disregard of the other evidence in the record. The Court is left with the firm conviction that the ALJ engaged in a selective reading of the record and did not comply with SSR 16-3p's directive that the finding be "consistent with and supported by the evidence...." For that reason, the case must be remanded to the Commissioner for further proceedings.

## V. CONCLUSION AND ORDER

For the following reasons, the Court sustains the statement of errors (Doc. 9) and **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

                                                 **/s/ Terence P. Kemp**
                                                 **Terence P. Kemp**
                                                 **United States Magistrate Judge**